**UNITED STATES of America,**
**Plaintiff/Garnishor,**

v.

**Michael A. McARTHUR, Defendant,**

**and**

**Navy Federal Credit Union, and**
**its successors or assigns,**
**Garnishee.**

**Criminal No. 13–0043–WS.**

United States District Court,
S.D. Alabama,
Southern Division.

Signed Feb. 21, 2014.

---

Sinan Kalayoglu, U.S. Attorneys Office, Mobile, AL, for Plaintiff.

Arthur J. Madden, III, Madden & Soto, Mobile, AL, for Defendant.

## FINAL ORDER FOR DISPOSITION OF GARNISHED FUNDS

WILLIAM H. STEELE, Chief Judge.

This matter comes before the Court on the Government's Motion for Final Order for Disposition of Garnished Funds (doc. 29), with incorporated memorandum of law.

On or about April 8, 2013, defendant, Michael A. McArthur, entered a guilty plea in this Court to one count of wire fraud, in violation of 18 U.S.C. § 1343. According to the Factual Resume that McArthur signed in connection with his plea, he engaged in a scheme and artifice to defraud his employer, Gulf Shores Golf Association, by obtaining money from it without authorization, by means of false and fraudulent representations. (Doc. 2, at 16.) McArthur agreed that this scheme and artifice to defraud caused a total loss to the company of between $30,000 and $70,000. (*Id.*) On July 23, 2013, the undersigned sentenced McArthur to probation for a term of five years, and ordered him to make restitution to Gulf Shores Golf Association in the amount of $56,911.51, pursuant to 18 U.S.C. § 3663A. (*See* doc. 17.) Contemporaneously with sentencing, the Court entered a money judgment in the amount of $56,911.51 against McArthur pursuant to Rule 32.2(b)(1)(A), Fed. R.Crim.P. (*See* doc. 16.)

As a matter of federal statute, this restitution order operates as "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Inter-

nal Revenue Code of 1986." 18 U.S.C. § 3613(c). In partial satisfaction of that lien, the Government obtained a Post–Judgment Continuing Writ of Garnishment (doc. 22) directed to garnishee, Navy Federal Credit Union ("NFCU"). The Clerk's Office issued the Writ of Garnishment to NFCU on October 17, 2013. The Government served copies of the Application and Writ of Garnishment, the Clerk's Notice with sample Request for Hearing and/or Transfer and Claim for Exemption Form, and instructions for objecting to the Garnishee's Answer and for obtaining a hearing, on both McArthur and Deborah McArthur (an interested party and McArthur's spouse) via Federal Express at their last known residential address on October 21, 2013. (*See* doc. 23.)

In its Second Amended Answer to the Writ of Garnishment, NFCU reported that it had possession, custody or control of a savings account (the "Account") in which McArthur had an interest. (Doc. 28, at 3.) According to that pleading, the Account (whose last four digits are 5201) is a joint account in the names of McArthur and Deborah McArthur, with a balance of $9,846.39. NFCU's Answer elaborated on the Account as follows: "Michael A. McArthur is joint owner on the account with the right to withdraw without notice to any other account owners or signatories. Deborah McArthur is primary owner with same rights." (*Id.*) NFCU certified that it served a copy of this Second Amended Answer on McArthur via U.S. Mail on November 14, 2013. (*Id.* at 6.) To date, neither McArthur nor Deborah McArthur has filed an objection to the proposed garnishment, claimed any exemption, or requested a hearing. The 20–day period established by 28 U.S.C. § 3205(c)(5) for objections or requests for hearings has long since expired.

■ As noted, both McArthur and his wife are listed as joint owners of the Account that the Government seeks to garnish. But the restitution order runs solely against McArthur, not his wife. Accordingly, a critical threshold question is whether the Government is entitled to garnish such co-owned property in enforcing the restitution order, which functions like an IRS tax lien pursuant to 18 U.S.C. §§ 3613(c) and 3613(f). In accordance with § 3613(c), once restitution was ordered, all of McArthur's property became subject to a lien in favor of the United States. The Government's enforcement powers on that lien (which has since been perfected) reach "all property or rights to property" of McArthur. 18 U.S.C. § 3613(a). To determine whether McArthur's interest in the Account constitutes "property or rights to property" under § 3613 and the federal tax lien statute, "[w]e look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *United States v. Craft,* 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002) (citation omitted). In the vernacular of the time-honored Cardozo "bundle of sticks" paradigm for analyzing property rights, "[s]tate law determines only which sticks are in a person's bundle. Whether those sticks qualify as 'property' for purposes of the federal tax lien statute is a question of federal law." *Id.* at 278–79, 122 S.Ct. 1414.

■ In looking to state law to determine McArthur's rights in the Account, the Government urges the Court to apply Florida law. This conclusion is proper, inasmuch as McArthur and his wife are domiciled in Florida; moreover, it appears

that they opened the Account at a NFCU branch in Florida. (*See* doc. 29, Exh. 2, at 4.) Under Florida law, "[a]ny deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." Fla. Stat. § 655.79(1). Nothing in the Account documents of record demonstrates that McArthur and his wife ever specified in writing that the Account was not to be considered a tenancy by the entirety; therefore, the statutory presumption controls and the Account is entireties property.[1]

■■■ Ordinarily, a tenancy by the entirety spells trouble for a creditor seeking to collect a judgment against one spouse, but not both. Under Florida law, "property held by husband and wife as tenants by the entireties belongs to neither spouse individually, but each spouse is seized of the whole." *Beal Bank, SSB v. Almand and Associates*, 780 So.2d 45, 53 (Fla.2001) (citation omitted); *see also In re Pierre*, 468 B.R. 419, 426 (Bankr.M.D.Fla.2012) (under Florida law, "[e]ntireties property belongs to neither spouse individually, but each spouse holds the whole or the entirety, and not a share, moiety, or divisible part") (citation and internal quotation marks omitted). "As long as all the unities remain intact, ... each spouse's interest comprises the whole or entirety of the property and not a divisible part; the estate is inseverable." *United States v. One Single Family Residence with Out Buildings Located at 15621 S.W. 209th Ave., Miami, Fla.*, 894 F.2d 1511, 1514 (11th Cir.1990) (citations omitted). Thus, under Florida law, "[c]reditors cannot levy on entireties property to satisfy the debt of an individual spouse." *Id.* at 1515 (citation

omitted); *see also United States v. Ryals*, 480 F.3d 1101, 1110 (11th Cir.2007) ("Florida law recognizes that property held by husband and wife as tenants by the entirety is not subject to execution to satisfy the debts of one spouse.").

■■■ Notwithstanding the foregoing, *Craft* teaches that state law determines only McArthur's rights in the Account, while federal law determines whether those rights constitute "property" or "rights to property" within the scope of the Government's enforcement powers for a tax lien (or, in this case, a restitution order in a criminal case). Federal law provides that "the IRS's federal statutory powers to tax and attach liens to property trumped any state property rights afforded to a taxpayer who holds property by the entireties with her spouse." *In re Sinnreich*, 391 F.3d 1295, 1298 (11th Cir. 2004); *see also Ryals*, 480 F.3d at 1110. Indeed, the Supreme Court has held that a debtor's "interest in the entireties property constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute," and that an IRS lien could therefore attach to that property even though state law would preclude levy on entireties property to execute on a judgment against one spouse or the other. *Craft*, 535 U.S. at 288–89, 122 S.Ct. 1414. Thus, the IRS possesses authority "to divide the property rights of tenancy by the entireties property," to enforce a tax lien. *Sinnreich*, 391 F.3d at 1297. The Government persuasively argues that, because 18 U.S.C. § 3613 confers the same enforcement rights on it in the context of a criminal restitution order that a tax lien would confer on the IRS,[2] the Government like-

---

1. The Government concedes as much. *See* doc. 29, at 10 ("it appears that under Florida law the judgment debtor and his spouse hold it as tenancy by the entirety property").

2. *See, e.g., United States v. Loftis*, 607 F.3d 173, 179 n. 7 (5th Cir.2010) (pursuant to § 3613(c), "a restitution order [is] enforceable to the same extent as a tax lien"); *United*

wise is entitled to divide and execute on McArthur's property rights in the Account, despite its status as entireties property. *See generally In re Gidner,* 2013 WL 5596971, *7 (Bankr.N.D.Tex. Oct. 11, 2013) (although Texas law provides that "sole management community property is ordinarily beyond the reach of a spouse's creditors . . ., this exemption does not apply to criminal restitution liens"); *United States v. Banks,* 2013 WL 357823, *4 (N.D.Tex. Jan. 10, 2013) (Texas "solely-managed community property state-law exemption does not apply to the United States for purposes of criminal restitution orders" because "[a]ny property that may be garnished to satisfy a tax lien may therefore be garnished to satisfy a restitution order" and "state law exemptions are not effective against the United States with respect to tax liens") (citations omitted).

■ The cases cited above and in the Government's brief arise largely in the context of an IRS levy, which is "a summary, non-judicial process, a method of self-help authorized by statute which provides the Commissioner with a prompt and convenient method for satisfying delinquent tax claims." *Ryals,* 480 F.3d at 1110 (citation omitted). Here, by contrast, the Government invokes the garnishment mechanism created by 28 U.S.C. § 3205 to execute on the Account. That discrepancy

is potentially significant because, unlike the IRS levy procedure, federal garnishment law specifically defers to state law for garnishment of co-owned property. *See* 28 U.S.C. § 3205(a) ("Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located.").[3] Under Florida law, of course, entireties property such as the Account would not be subject to garnishment to enforce a judgment entered against McArthur only (and not his spouse); therefore, if this portion of § 3205(a) applies, it would appear to defeat garnishment here. The Government's Motion does not address the tension between the result it seeks and § 3205(a), the federal garnishment statute on which it relies.

Despite the Government's silence, two other provisions convince the Court that § 3205(a) is not fatal to the Motion for Final Order for Disposition of Garnished Funds. First, with certain exceptions that are inapplicable here, the federal statute providing for enforcement of criminal fines and restitution orders provides that, *"[n]otwithstanding any other Federal law . . . ,* a judgment imposing a fine [or restitution order] may be enforced against all property or rights to property of the person fined." 18 U.S.C. § 3613(a) (emphasis added). Second, the Federal Debt

---

States v. Kollintzas, 501 F.3d 796, 802 (7th Cir.2007) ("Liens to pay restitution debts are treated like tax liens . . ., so that they are effective against every interest in property accorded a taxpayer by state law.") (citations and internal quotation marks omitted); *United States v. Irving,* 452 F.3d 110, 126 (2nd Cir.2006) ("§ 3613(c) demands that criminal fines in favor of the United States should be enforced in the same manner as a tax liability would be enforced"); *United States v. Goddard,* 735 F.Supp.2d 820, 823 (E.D.Tenn. 2010) ("any property the IRS can reach to satisfy a tax lien, a sentencing court can also reach in a restitution order") (citations omit-

ted); *United States v. Edward D. Jones & Co., L.P.,* 2011 WL 7025905, *2 (E.D.Tex. Dec. 21, 2011) (same).

3. *See also United States v. Rogan,* 639 F.3d 1106, 1108 (7th Cir.2011) (for co-owned property, "the law of the state in which the property is located determines how far the writ of garnishment reaches"); *United States v. Loftis,* 2008 WL 282313, *2 (N.D.Tex. Feb. 1, 2008) ("Section 3205(a) requires the Court to look to Texas law to determine what co-owned property may be garnished.").

Collection Procedures Act (in which the § 3205 garnishment statute is found) expressly provides that "[t]his chapter shall not be construed to curtail or limit the right of the United States under any other Federal law ... (1) to collect taxes or to collect any other amount collectible in the same manner as a tax; [and] (2) to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case." 28 U.S.C. § 3003(b)(1)-(2). Both of these statutes unambiguously instruct that the § 3205(a) language pegging garnishment of co-owned property to limits imposed by state law should not be read as curtailing or limiting the Government's right to enforce the restitution order against McArthur by collecting on all of his property or rights to property, including the Account. In other words, § 3205(a) must give way to § 3613(c), and the Government is entitled to garnish McArthur's property interest in the Account, even though Florida law would deem it a tenancy in the entirety that is not subject to garnishment for the debts of one or the other spouse.

Given the Court's determination that McArthur's interest in the Account is properly subject to garnishment by the Government pursuant to the restitution order and accompanying lien, the only remaining issue is what portion of the Account should be garnished. Without really explaining why (other than by reference to a Florida appellate decision that did not arise in the tenancy by the entirety context), the Government contends that "one half (1/2) of the funds presently held in the joint savings account" should be paid over to the Clerk of Court as McArthur's interest in same. (Doc. 29, at 14.) There is legal support from other jurisdictions for this proposition. *See, e.g., Popky v. United States,* 419 F.3d 242, 245 (3rd Cir.2005) ("Valuing the interests of tenants by the entireties equally accords with the long-standing Pennsylvania common law defini-

tion of tenancies by the entirety."); *United States v. Goddard,* 735 F.Supp.2d 820, 829 (E.D.Tenn.2010) ("the Court concludes Defendant's interest for purposes of his restitution obligation is an equal one-half share of the [entireties property]"). Neither McArthur nor Deborah McArthur have proposed a different valuation of McArthur's interest in the Account. Moreover, the Court agrees that valuing each spouse's interest in the entireties property equally constitutes a "simple default rule [that] can be applied to most cases with predictable results, while still giving a court the flexibility to impose an alternative distribution if the particular facts of a case demand it." *United States v. Barczyk,* 697 F.Supp.2d 789, 800 (E.D.Mich.2010). The Court is aware of no facts or circumstances that might warrant an alternative distribution here; therefore, this Court finds that one-half of the contents of the garnished Account are properly paid over to the Clerk of Court as McArthur's interest in that entireties property.

For all of the foregoing reasons, the Court concludes that the Government's Motion for Final Order for Disposition of Garnished Funds (doc. 29) is due to be, and hereby is, **granted.**

It is therefore **ordered** as follows:

1.  The Garnishee, and its successors or assigns, shall immediately turn over one-half (1/2) of the garnished funds presently held in the joint savings account ending in 5201, and any and all other monies withheld or derived since service of the Writ of Garnishment, to the U.S. Clerk of Court for the Southern District of Alabama.

2.  Pursuant to 28 U.S.C. § 3205(c)(10)(B), the garnishment is a continuing writ of garnishment and remains in effect until terminated by exhaustion of property in the posses-

sion, custody or control of the Garnishee in which the debtor has a substantial nonexempt interest.

3. All checks are to be made payable to the U.S. Clerk of Court, Southern District of Alabama, and mailed or delivered to the following address:

Clerk of Court, U.S. District Court

113 St. Joseph Street

Mobile, AL 36602

Ref: MICHAEL A. McARTHUR

Criminal Case No. 13–00043–WS

4. Upon termination of the writ of garnishment as outlined above and as required by 28 U.S.C. § 3205(c)(9)(B), the Government will make a cumulative accounting of all property it receives under the Writ of Garnishment to the Garnishee and Defendant within fourteen (14) days after the garnishment terminates. Within fourteen (14) days after such accounting is received, Defendant and/or Garnishee may file a written objection to the accounting and request a hearing. The party objecting shall state grounds for same. The Court shall hold a hearing on any such objection within fourteen (14) days after it is filed, or as soon thereafter as is practicable.

5. Finally, this Order shall take effect after all prior orders of garnishment, if any, have been satisfied. Pursuant to 28 U.S.C. § 3205(c)(8), judicial orders and garnishments for the support of a person shall have priority over this writ of garnishment. As to any other writ of garnishment or levy, this writ of garnishment has priority over writs which are issued later in time.